UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL RAMSEY,                                    18-CV-0877-MJR

               Plaintiff,                              DECISION AND ORDER

    -v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 26)

Plaintiff Michael Ramsey ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 19) is granted, defendant's motion (Dkt. No. 22) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff filed an application for DIB on April 1, 2015, alleging disability since January 1, 2012. (See Tr. 127-28)[1] Plaintiff later amended his alleged onset date to November 1, 2013. (Tr. 32) His application as initially denied, and plaintiff requested an

---

[1] References to "Tr." are to the administrative record in this case. (Tr. 11)

administrative hearing.  (Tr. 54-56, 70-72)  Administrative Law Judge ("ALJ") Roxanne

Fuller held a telephonic hearing on May 11, 2017, during which plaintiff, his attorney, and

a vocational expert testified.  (Tr. 28-46)  On July 19, 2017, ALJ Fuller issued a decision

that plaintiff was not disabled under the Act.  (Tr. 15-23)  Plaintiff's request for review of

the ALJ's decision was denied by the Appeals Council on October 23, 2017.  (Tr. 1-6)

This timely action followed.  (Dkt. No. 1)

The issue before the Court is whether substantial evidence supports the ALJ's

decision that plaintiff was not disabled during the five months from his alleged November

1, 2013, onset date of disability through March 31, 2014, the date last insured.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act,

the Commissioner's factual determinations "shall be conclusive" so long as they are

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

relevant evidence as a reasonable mind might accept as adequate to support [the]

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

and citation omitted).  "The substantial evidence test applies not only to findings on basic

evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v.

Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

rests on adequate findings supported by evidence having rational probative force," the

Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

5

III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the relevant time period.  (Tr. 17)  At step two, the ALJ found that plaintiff had the severe impairments of osteoarthritis in both knees, cervical degenerative disease, and obesity.  (Tr. 18)  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 18)  Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform light work[2] with the following limitations: occasionally climb ramps and stairs, and never ladders, ropes, or scaffolds;  occasionally balance and stoop, and never kneel, crouch, or crawl; occasional exposure to moving mechanical parts and unexpected heights; and occasional operation of a motor vehicle.  (Tr. 19)

Proceeding to step four, the ALJ concluded that plaintiff was unable to perform his past relevant work as a route driver.  (Tr. 22)  At step five, the ALJ found that plaintiff could perform representative occupations such as office helper, mail clerk, and retail sales attendant.  (Tr. 23)  Accordingly, the ALJ found that plaintiff was not disabled under the Act.  (*Id.*)

IV.   *Plaintiff's Challenges*

Plaintiff argues that that remand is required because the ALJ improperly substituted her own medical judgment over that of a physician; she did not properly weigh

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *See* 20 CFR §416.967(b).

the medical opinions of record; and erred in failing to develop the record.  (Dkt. No. 19-1 at 15-25)

For the reasons that follow, the Court agrees that remand is required.

Plaintiff was 50 years old as of his date last insured.  (Tr. 16). He completed two years of college, and last worked as a route driver and warehouse worker for Imperial Pools from 2002 to 2008.  (Tr. 42-43, 165-166, 173, 185, 188)  When plaintiff applied for disability benefits, he alleged he could not work due to cervical disc herniations, arthritis in both knees, diabetes, hypertension, obesity and a sleep disorder.  (Tr. 172)

In this case, the ALJ found that plaintiff had the RFC to perform light work with restrictions.  (Tr. 18)  In formulating the RFC, the ALJ evaluated the record evidence, which included treatment notes before and after the relevant period.  With respect to the opinion evidence, the ALJ found:

> Though no consultative examinations were performed, the medical record includes multiple worker's compensation evaluations and treatment notes from various providers.  The findings of the Worker's Compensation Board are not binding on me and I must make a determination based on Social Security law.  I have considered the Board's findings and have given them limited weight.  All of the opinions either were given before the amended alleged onset date, and are therefore remote, or were provided after the date last insured, and deal with a time after the relevant period.

(Tr. 21)

Generally, when assessing a plaintiff's RFC, "[a]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." *Goldthrite v. Astrue*, 535 F. Supp. 2d. 329, 339 (W.D.N.Y. 2008)*; see also Wilson v. Colvin,* No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC

without a medical advisor's assessment is not supported by substantial evidence."); *Felder v. Astrue*, No. 10-CV-5747, 2012 WL 3993594, *13 (E.D.N.Y. Sept. 11, 2012) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.") However, when the medical evidence shows only minor impairments, "an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Wilson,* 2015 WL 1003933, *21.

A review of the medical records reveals that plaintiff injured his right knee on June 12, 2006, while working at Imperial Pools.  He initially underwent conservative treatment for his knee injury, which was unsuccessful.  (Tr. 502)  Plaintiff then injured his left knee on June 13, 2007, while unloading a pallet of sand from a truck.   (Tr. 310, 315, 387)

Plaintiff underwent surgery on his right knee for a medial meniscus tear in October 2008.  (Tr. 242)   In March 2009, he underwent left-knee surgery.  (Tr. 338)  He started physical therapy and progressed well.  (Tr. 336, 504, 859)

Between August and September 2010, plaintiff went to physical therapy for his right knee with variable compliance.  (Tr. 846)  In August 2011, plaintiff underwent another surgery on his right knee.  (Tr. 940)  He reported improvement in October 2011 after starting acupuncture. (Tr. 419)  Plaintiff went to physical therapy between August 2011 and January 2012 for his right knee; he was discharged, as maximum benefit was achieved.  (Tr. 836-45)

In May 2012, a right-knee x-ray showed "evidence of significant osteoarthritis involving the medial femoral compartment.  This is near bone on bone."  (Tr. 507)  He

also had moderate degenerative changes.  (*Id.*)  In December 2012, left-knee imaging showed severe medial compartment degenerative changes with bone on bone changes due to left knee osteoarthritis.  He did not want surgery at that time.  (Tr. 320)  Between January and March 2013, plaintiff participated in physical therapy for both knees and partially achieved his goals with a "fair" functional outcome.  (Tr. 831)

Plaintiff also had history of cervical spine issues stemming from a separate work-related injury to his neck in September 2001 while lifting a 40 or 50-pound box from the floor to table height.  (Tr. 608)   Orthopedic surgeon Robert Durning, M.D., examined plaintiff in October 2008 and reviewed his medical records and diagnostic imaging dating back to the 2001 injury.  He assessed neck pain with multilevel disc derangement including disc herniation at C5-6 and active left C6 nerve root dysfunction.  Surgery was recommended and the prognosis for spontaneous improvement was poor.  (Tr. 608-610)

Plaintiff underwent physical therapy for his cervical spine between September 2008 and December 2008.  (Tr. 222, 292)  In January 2009 and May 2010, treatment notes reflect that plaintiff had pain with range of motion, some tenderness to palpation, and limited range of motion in the cervical spine.  He was diagnosed with cervicalgia, cervical radiculopathy, and cervical disc herniation.  (Tr. 275, 288-89)  A June 2010 cervical MRI showed multilevel degenerative disc disease; this was unchanged in February 2011.  (Tr. 274, 280)  Imaging in May and July 2011 showed spondylosis with minimal retrolisthesis and disc herniation.  (Tr. 533, 614)

Plaintiff went to chiropractic treatment between September and November 2013, around the time of the alleged onset date of disability.  (Tr. 519-23)  In September 2013, he had limited range of motion of the cervical spine, and rated his pain 7/10.   (Tr. 519)

9

The assessment was an aggravated old condition.  (Tr. 520)  In October 2013, plaintiff reported intermittent pain of 6/10.  It was noted that he responded well to care.  (Tr. 520)  On October 8, 2013, plaintiff rated his average pain level of 5-6/10.  (Tr. 521).  Between October 8 and November 29, plaintiff rated his average pain level of 5/10 and responded well to care.  (Tr. 521-23)

Plaintiff also received treatment and underwent independent medical exams in 2014 with workers' compensation physicians after the date last insured.  In October 2014, he received diagnoses to include cervical disc displacement, cervical degenerative disc disease, cervical radiculopathy, and cervical sprain/strain. (Tr. 706)  He continued to complain of pain in his neck through December 2014.  (Tr. 617, 644, 652, 655, 694, 700, 704)  In November 2015, plaintiff underwent an anterior discectomy and fusion.  (Tr. 624, 952)

The record contains opinions from plaintiff's independent medical examiners in connection with his workers' compensation case.  On December 8, 2008,  Dr. John Giardino opined that plaintiff was moderately disabled and could perform work which did not require lifting in excess of 25 pounds. (Tr. 377)  On June 17, 2009, Dr. Barry Katzman opined there was no causally related disability and that Mr. Ramsey could return to work as he had no disability.   (Tr. 362)  On August 14, 2009, Dr. James Faulk opined that plaintiff reached his maximum medical improvement and no further orthopedic treatment was indicated for his left knee.  Plaintiff could perform medium work but that he could not squat continuously, would have some difficulty kneeling for prolonged periods or repetitively, and could only occasionally climb a ladder.  (Tr. 313)

On March 19, 2010, Dr. Steven Hausmann diagnosed plaintiff with a torn medial meniscus on the left knee, status post left knee arthroscopic medial meniscetomy, and osteoarthritis of the left knee. (Tr. 304)  He opined a 32.5% scheduled loss of use of the left leg. (Tr. 305)

On November 14, 2011, Dr. Giardino noted that plaintiff had moderate degenerative disease of the right knee as well some degenerative disease in the left knee, and that plaintiff was "totally disabled at this time and unable to perform any useful occupation." (Tr. 374)

On June 20, 2012, Dr. Hausmann opined that plaintiff had a moderate to marked level of disability for the right leg, and could work a light duty job where he would not lift in excess of 25 pounds, and stand and walk up to 4 hours per day. (Tr. 367)

In addition, the record contains opinions from treating physicians Dr. Paul Mason, Dr. Michael Calabrese and Dr. Cheryle Hart dated between August 2012 and October 2014. (Tr. 333, 379, 402, 618, 633, 638, 648, 656)  Those opinions assessed various levels of disability, from 50% to 100%, and work restrictions including lifting no greater than 20 pounds, avoiding overhead lifting, excessive overhead reaching, and carrying, pushing, or pulling. (*Id.*)

In the ALJ's decision, she discounted all of the independent medical examinations and did not discuss the medical opinions from Drs. Mason, Calabrese, and Hart.  As noted, there were no consultative examinations in the record. (Tr. 21)

Despite the lack of opinion evidence, the ALJ found Mr. Ramsey could perform light work with certain restrictions. (Tr. 22-23)  The ALJ appears to have rejected the numerous treatment medical sources in the record because they were outside the window

between the alleged onset date of November 1, 2013, and date last insured of March 31, 2014.  This is problematic because the medical opinions of record which pre-date and post-date the period at issue may support a more restrictive RFC than the ALJ determined.  "[A] medical opinion need not be rejected or ignored solely because it predates the relevant time period, particularly where the record otherwise contains limited information regarding the claimant's functional capabilities . . . ." *Williams v. Comm'r of Soc. Sec.*, No. 17-CV-6400, 2018 WL 4443173, at *5 (W.D.N.Y. Sept. 18, 2018).  This is of particular importance in this case, where the relevant period at issue is only five months, and there is no evidence that plaintiff's conditions improved during that time. Moreover, the opinions of Drs. Mason, Calabrese, and Hart specifically addressed plaintiff's functional limitations and were not included in the ALJ's discussion.  It is unclear, then, what evidence the ALJ relied upon in formulating the RFC.  *See Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [her] conclusion to enable a meaningful review.'") (citation omitted, alteration added).

While it is true that opinions of disability rendered in connection with a workers' compensation claim are not binding on the Commissioner, an ALJ must nonetheless weigh all medical opinions.  *Powell v. Colvin*, No. 14 CV 1176, 2016 WL 8542604, at *14 (D. Conn. Sept. 28, 2016), *report and recommendation adopted*, 2017 WL 1053080 (D. Conn. Mar. 20, 2017) (quoting Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *7 (S.S.A. Aug. 9, 2006) ("A determination regarding disability made by another agency is not binding on the Commissioner 'because other agencies may apply different rules and standards . . . for determining whether an individual is disabled[.]'  However, because

these decisions 'may provide insight into the individual's mental and physical impairment(s)[,]' 'evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.'") Thus, even if the opinions of Drs. Mason, Calabrese, and Hart were rendered for plaintiff's workers' compensation case, they should have nonetheless been weighed and considered.

Finally, the Court mindful that in certain circumstances, "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.'" *Walker v. Astrue,* No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010), *report and recommendation adopted,* No. 08-CV-828, 2010 WL 2629821 (W.D.N.Y. June 28, 2010) (quoting *Manso–Pizarro v. Sec'y of Health and Human Svcs,* 76 F.3d 15, 17 (1st Cir.1996). This, however, is not a case where the medical evidence shows only minor impairments and the ALJ could render a common-sense judgment as to plaintiff's physical capabilities. Plaintiff has a longstanding history of back and knee impairments with multiple surgeries. By rejecting the independent medical examinations and failing to discuss the opinions of plaintiff's physicians, the ALJ created an evidentiary gap. *See, e.g, Stein v. Colvin,* No. 15-CV-6753, 2016 WL 7334760, *4 (W.D.N.Y. Dec. 19, 2016) ("Regardless of whether it was proper for the ALJ to discount this opinion, the ALJ's rejection of the only medical opinion in the record created an evidentiary gap requiring remand."); *Hopper v. Berryhill,* 16-CV-6573, 2017 WL 5712307, *3 (W.D.N.Y. Nov. 28, 2017) ("It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this highly specific determination" after rejecting the only medical opinion in the record as to plaintiff's mental ability to perform work related functions).

13

Because there is no medical source opinion supporting the ALJ's finding that plaintiff can perform light work with some additional restrictions, the Court concludes that the ALJ's RFC determination is without substantial support in the record and that remand for further administrative proceedings is appropriate.   On remand, the ALJ should evaluate all of the medical opinions of record, and develop the record as necessary with respect to plaintiff's treating orthopedic surgeon, Dr. William Capicotto.[3]

Because the Court has determined that remand is warranted on this basis, it need not reach plaintiff's remaining arguments.

## CONCLUSION

For the foregoing reasons, plaintiff Michael Ramsey's motion for judgment on the pleadings (Dkt. No. 19) is granted, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 22) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      May 29, 2020
            Buffalo, New York


                                          MICHAEL J. ROEMER
                                          United States Magistrate Judge

---

[3] There are no medical reports from Dr. Capicotto from 2013 and 2015 in the administrative record, despite being referenced.  (*See* Tr. 660)  Because these reports cover the relevant period in this case, they may contain contemporaneous evidence pertinent to plaintiff's functional abilities.

14